# Richmond.

RYAN v. KRISE.

March 16th, 1893.

USURY—*Construction of statutes.*—Under Code, § 2824, plaintiff, who was a judgment creditor of R. & Co., filed his bill against the defendant, making his allegations in accordance with the provisions of said section, and praying that, if more than legal interest had been received by the defendant from R. & Co. in their dealings during the five years next theretofore, the excess should be applied, as far as necessary, to the satisfaction of his judgment against R. & Co.

HELD:

Such excess should be applied to satisfy plaintiff's judgment.

Appeal from decree of circuit court of city of Lynchburg, rendered May 20th, 1890, in a cause wherein W. H. Ryan was complainant and P. A. Krise was defendant. The decree being adverse to complainant, he appealed. Opinion states the case.

*Tucker & Ingram* and *W. W. Henry*, for appellant.

*A. H. Burroughs* and *W. R. Staples*, for appellee.

LACY, J., delivered the opinion of the court.

The case is as follows: At rules on the third Monday in August, 1888, the appellant filed his bill in the circuit court of the city of Lynchburg, setting forth that he had, on the 2d day of August, 1888, recovered judgment by confession in the clerk's office in the said court for $1,300, with interest from the 1st day of October, 1887, and $8.35 costs; and the said bill is filed against one P. A. Krise, the appellee, and no

other person, the said judgment debtors not being made parties to the suit. The complaint against the defendant, Krise, is that within the five years next preceding the filing of the said bill usurious dealings, by virtue of which he apprehends that he is in danger of loss, were had by the said judgment debtors with the said defendant, P. A. Krise ; praying that the said P. A. Krise might be made a party defendant to the said bill and required to answer the same, but answer under oath was waived, and that the cause might be referred to a commissioner of the court to inquire into all contracts, bargains, or shifts relative to the said usurious dealings, and make report to the court of the amount of illegal interest received by the said defendant, and that any illegal interest that may thus appear to have been received by the said defendant may be applied, as far as necessary, to satisfy the complainant's judgment, and for general relief.

The defendant, Krise, demurred to the bill of the plaintiff, and the same being argued, the cause was submitted to the judge of the court to be decided and decree therein in vacation, by consent of parties, by counsel. The demurrer was overruled by decree in the cause on the 14th day of May, 1889, and an account ordered according to the prayer of the bill. But during the term this order was set aside, three other causes being ordered to be heard with this, and an account ordered—

First. An account showing what sums, as interest, discount, or for the transfer of paper by endorsement, have been paid by Samuel B. Rucker and C. T. Rucker, late partners as Samuel B. Rucker & Co., or the individual members composing said firm, to the said P. A. Krise, within five years from the bringing of the said several suits, respectively, and the excess of said sum above legal interest.

Secondly. An account showing how much of the said sums claimed by judgments remained now due.

Thirdly. An account of the indebtedness of the said Samuel B. Rucker & Co., and the individual members of the said firm, to the said P. A. Krise.

The defendant answered the plaintiff's bill, and denied that the plaintiff had any judgment, or any valid debt, against the debtor, the supposed debt and judgment being the result of a fraudulent combination between the judgment debtors and the alleged judgment creditor; and claiming that the supposed judgment debtors were still largely indebted to them in sums representing principal money and legal interest.

The commissioner reported—

First. An account showing what sums, as interest, discount, or for the transfer of paper by endorsement, have been paid by Samuel B. Rucker & Co., or the individual members composing said firm, to the said P. A. Krise, within five years from the bringing of the said several suits, respectively, and the excess of said sums above legal interest; the total amount of discount being ascertained to be $10,956.69; total amount of legal interest being ascertained to be $3,467.27; the excess of legal interest being ascertained to be $7,489.42.

Secondly. An account showing how much of the amounts represented by judgments in favor of the several plaintiffs, respectively, remains due by Rucker & Co., or the individual members thereof, to the said plaintiffs. And this was ascertained to be $6,343.55.

Thirdly. An account of the indebtedness of the said Samuel B. Rucker & Co., and the individual members of the said firm, to the said defendant, P. A. Krise. And this account is stated as follows: "The amount of this indebtedness is fixed by the said P. A. Krise, *in round numbers*, between $10,000 and $11,000—say $11,000."

The court, by decree in the cause on the 20th day of May, 1890, approved and confirmed the said commissioner's report; and declaring that it appeared that, after debiting the defend-

ant with all excess of interest over 6 *per cent.* by him charged against the debtors in said cause, the principal of his debt is still unpaid by a considerable sum, the court did adjudge, order, and decree that the said bills of the plaintiffs be dismissed, with costs, and ordered that the defendant, Krise, should credit Rucker & Co. with all sums charged and taken in excess of legal interest.

The plaintiff, insisting that this illegal interest should be paid to him in satisfaction of his judgment, and that the usurious lender should not be allowed to retain such usurious interest, and not pay it to the plaintiff judgment creditor, because, as is alleged, usurious borrower owed him a large sum, made up of principal and legal interest, applied for and obtained an appeal to this court.

The law under which this suit was brought is as follows : " Any judgment creditor who apprehends that he is in danger of loss by reason of usurious dealings on the part of his debtor may exhibit his bill in equity, verified by affidavit, *against the party with whom the dealings were had,* and compel him to discover, on oath, all bargains, contracts, or shifts relative to such dealings ; and, if it appear that more than legal interest has been received, *the excess above that rate,* or so much thereof as may be necessary, *shall be applied to the satisfaction of the plaintiff's demand.* Such bill shall be filed within five years after the receipt of the illegal interest." Sec. 2824 of the Code of Virginia.

The question to be decided in this case is, What is the true construction of this statute ? In this case the right of the judgment creditor under this section to file his bill against the usurious lender is maintained by the circuit court, and the amount of the usurious interest taken and received within five years is ascertained. It is not, however, then *applied to the satisfaction of the plaintiff's demand,* so far as is necessary to discharge it, but an account is stated between the usurious

lender and the usurious borrower, in a proceeding to which the borrower is not a party, and upon the allegation of the lender, *ex parte,* so far as the borrower is concerned, in the estimate of the lender, as to transactions exceeding a quarter of a million of dollars. The amount of the principal and legal interest is stated as "between $10,000 and $11,000—say $11,000"; and the usurious lender is allowed to keep the usurious interest, and credit it upon his estimated balance of—"say $11,000." This statute is of the kind known as remedial—a statute giving a party a mode of remedy for a wrong when he had none, or a different one, before.

Mr. Blackstone says there are three points to be considered in the construction of all remedial statutes—"the old law, the mischief, and the remedy—that is, how the common law stood at the making of the act, what the mischief was for which the common law did not provide, and what remedy the Parliament hath provided to cure this mischief; and it is the business of the judge so to construe the act as to suppress the mischief and advance the remedy." It is contended in argument here that this is a penal statute, because it involves a forfeiture, and should be strictly construed. It is a statute rather against fraud, and should be liberally and beneficially construed and expounded. Mr. Blackstone says this may seem to be a contradiction to what has been said about a penal statute; but this difference is here to be taken: "When a statute acts upon the offender and inflicts a penalty, as the pillory or a fine, it is then to be taken strictly; but when the statute acts upon the offender by setting aside the fraudulent transaction, here it is to be construed liberally; and upon this footing the statute of 13 Eliz., ch. 5, which avoids all gifts of goods, &c., made to defraud creditors and others, was held to extend, by the general words, to a gift made to defraud the queen of a forfeiture. And we may remark here that the analogy between the statute in question

and the statute concerning fraudulent gifts is striking, each being, in the eye of the law, a device by which a creditor is defrauded of his just debt by a fraudulent and unlawful device, and in each case the creditor thus in danger of being defrauded is allowed his remedy to relieve against a mischief which threatens him."

It is said that " interpretation should only tend to the discovery of the will of the contracting power. We should then attribute to each term the sense which he who speaks had probably in his mind."

" The reason of the law—that is, the motive which led to making of it—is one of the most certain means of establishing the true sense. As soon as we know the reason which alone has determined the will of him who speaks, we ought to interpret his words and apply them in a manner suitable to that reason."

It is a well-established American rule of construction that it is not permitted to interpret that which has no need of interpretation. When an act is expressed in clear and precise terms—when the sense is manifest and leads to nothing absurd—there can be no reason not to adopt the sense which it naturally presents.

And another is that, when courts are interpreting a statute, the thing to seek is *the thought* which it expresses. To ascertain this the first resort in all cases is to the natural signification of the words employed, in the order and grammatical signification in which they stand. If, thus regarded, the words embody a definite meaning, which involves no absurdity, and no contradiction between different parts of the same writing, then that meaning, apparent upon the face of the instrument, is the one which alone we are at liberty to say was intended to be conveyed.

In the enactment of statutes, the rule of interpretation is, in respect to the intention of the legislature, that, when the

language is explicit, the courts are bound to seek for the intention in the words of the act itself, and they are not at liberty to suppose or to hold that the legislature intended anything different from what their language imports.

In our efforts to arrive at the true meaning of this statute, it will be helpful to turn back to its first enactment, and contemplate its surroundings at that time. In 1849 it first appears upon our statute-book. When the Code of 1849 was reported to the legislature by the revisors of that day they recommended a practical abolition of our usury laws, their recommendations embodying a law which allowed the excess only above the legal rate to be recovered back, and authorized a contract for 8 *per cent.*, " as better sustained by the enlightened opinion of modern times, more equitable, better calculated to diminish litigation, and conducing more to the welfare of the state." But the law-making power of this state declined to adopt their enlightened views, and adhered to the usury laws of the commonwealth; and, by the fifth section of chapter 141 of that Code, it was enacted that all contracts and assurances made, directly or indirectly, for the loan or forbearance of money or other thing at a greater rate than is allowed by the law (section 4) shall be void. The sixth section provided for the mode of defense to an action upon an usurious contract. The seventh section authorized the borrower to file his bill against the lender, and compel a discovery; and, if usury was established, the lender was to have his principal money only, and pay costs. By the eighth section, in one year, the borrower paying such usurious interest was allowed to recover it back by suit. Next followed section 9, which is the section we now have under consideration. By the tenth section, upon a bill to stay the sale of property under usurious contract, provision was made for the same relief as where the party claiming under the conveyance had resorted to the court to make his claim available—

that is, it was void. The eleventh and last section of the chapter provided for a forfeiture by the usurer of double the value of the money or other thing forborne, and one half to go to the informer.

The ninth section provided, as we have seen, that the judgment creditor should have the right to file his bill against the party who had usurious dealings with his debtor, compel him to discover on oath, and, if it appeared that more than legal interest had been received, the excess above that rate—the excess above the legal rate, so far · as required to pay the plaintiff's debt—*should be applied to the satisfaction of the plaintiff's demand.* If, under the law at the time of the enactment of this section, such suit should have been brought by a judgment creditor, and the usury established, if the defendant had asked to have the usurious interest applied to the extinguishment of the principal money due under this usurious contract, so far as it would go, the answer was obvious: The contract is void in its entirety; there is no valid debt existing against the debtor, usury having been established or admitted. And also, under the eighth section, the borrower had a right, for a year, to bring his suit, and recover back this usurious interest; but he has not availed of his legal rights, and his remedy is gone. To credit it upon his principal debt is to refund it to him. Or, under the seventh section, the borrower might have filed his bill and prevented its payment, and avoided the payment of all interest. He has not availed of this provision.

This proceeding is under the ninth section, and the law provides that this usurious interest, having been once established, shall be applied to the satisfaction of the plaintiff's demand. To apply it to the satisfaction of the principal debt and legal interest is to apply it to pay the borrower's debt. This suit is not for his benefit, but for the benefit of the judgment creditor's demand.

But it is ably argued by the learned counsel for the appellee that this is a bill seeking a discovery, and that the plaintiff, coming in to ask relief in equity, must do equity. Is this sound? Does the plaintiff come into equity asking equitable relief, or does he come in demanding a statutory right which the statute gives him? He does not ask to have enforced, or have released, any contract obligation whatever. He has with the defendant *no contract relation* whatever. He has never dealt with him. He is a stranger to the defendant, the only other party to the suit. He has a contract relation with the judgment debtor, but the judgment debtor is not a party to this suit, and does not stand related to it either to prosecute or to defend it.

The object of the suit is not to adjust accounts between the judgment creditor and the judgment debtor. That has been done, and the questions determined by a final judgment. If the statute had intended that the accounts between the lender and the borrower should be adjusted *pro* and *con*, and the final balance struck between the borrower and the usurious lender, is it not reasonable to say that, in such case, the borrower would have been pointed out as a party to be brought into the suit? Indeed, can the true balance be ascertained in any binding way between the usurious lender and the usurious borrower until the borrower is a party? It will not often happen that the true balance will ever appear upon an *ex parte* statement of the usurious lender, in the absence of his debtor. In this case it has not been ascertained in such way as to safely support a judgment or decree. The usurious lender estimates the principal and legal interest still due, " in round numbers," at from " $10,000 to $11,000 "; and, as this is a larger sum than the usurious interest received for five years, the court dismisses the bill of the plaintiff, and denies him the relief given him by the law.

The provisions of our law under the present Code of Vir-

ginia are substantially the same as stated above from the Code of 1849, except that under a contract, when usury is established, the principal debt is not avoided by the usury, and stands as a valid debt against the debtor, which was not the case under the Code of 1849, when, the usury being established, the whole debt was rendered void. When this statute is considered in the light of contemporaneous enactments, and its object duly regarded, it appears to be a provision to meet a case of hardship, where the usurious borrower has paid usurious interest to the neglect of the legal rights of his judgment creditor, and declines, neglects, and refuses to avail of his right to recover his money back, when the defrauded creditor, who has a lawful claim, is given the right to recall money unlawfully paid to the usurer to the denial of his legal rights—for his own benefit, not for the benefit of the wrongdoing usurer, nor for the benefit of the wrong-doing debtor. When he has developed the usury, the law, in plain, unmistakable terms, commands that it shall be applied to the satisfaction of the plaintiff's demand. Shall this law be enforced in accordance with its plain provisions? The effect of the decision rendered by the circuit court is to deny the remedy to the judgment creditor and nullify the law. These transactions, over one thousand in number, running through five years in time, and aggregating more than a quarter of a million dollars, have, many of them, been paid in full, and so all the principal extinguished and new debts created by new loans; and in this case the plain effect of the decree of the circuit court is to recoup all the usurious interest received by the usurious lender on many transactions, and restore it to the usurer to satisfy other debts and demands. This is obviously, upon the facts as well as upon the law, a disregard and nullification of the statute. This statute has been upon our statute-book for more than fifty years, and yet no suit has ever arisen under it, and there has been, therefore, no decision

upon the question, and we are without the aid and the light to be derived from the work of others, there being no precedents to follow. But the question has been argued with great ability on both sides by some among the ablest counsel at our bar, and we have reflected long upon the main question involved—whether this usurious excess should be used to settle the accounts between the usurious lender and borrower, to the extinguishment of the principal and legal interest still due between lender and borrower, or *to the satisfaction of the plaintiff's demand*, as the law directs—and we have come to the conclusion that we must enforce this statute as the legislature has written it. Our Code has recently undergone a careful revision, and the statute has remained unaltered. It must be regarded to be, by its terms, an expression of the legislative mind.

The reason of the law, as we construe it, is obvious, to suppress usurious transactions, and the mind of the law—the plain intention—is to give a remedy to a defrauded creditor, by which he shall be enabled to avoid the illegal disposition of his property by the judgment debtor, so as to defeat his just claim.

We are of opinion that this excess over the legal interest should be paid to the satisfaction of the plaintiff's demand; and, likening this proceeding to the case of a creditor attacking a fraudulent deed or other transaction for fraud, we are of opinion that the creditor first filing his bill has, by reason of his priority, the better right; and, where there are several creditors, their demands are to be paid in the order in which the bills are filed. It follows that the decree of the circuit court of Lynchburg must be reversed and annulled.

LEWIS, P., and RICHARDSON, J., *dissented.*

DECREE REVERSED.