# Richmond.

## W. L. Utz v. V. R. Shackelford

### and

## W. L. Utz v. George S. Shackelford's Administratrix.

March 20, 1924.

Absent, Burks, J.

1. Contracts—*Construction—Ambiguous and Unambiguous Contracts—Surrounding Facts and Circumstances.*—Written contracts, where unambiguous, should be construed as actually written; if ambiguous, the court will look to the surrounding facts and circumstances for assistance in ascertaining the proper construction to be placed upon them.

2. Vendor and Purchaser—*Contract with Attorneys to Buy Certain Land—Whether Attorneys Personally Liable for Failure to Obtain Land at Price Agreed—Case at Bar.*—In the instant case plaintiff in a written agreement with defendants, a firm of attorneys, agreed "to buy the property now standing in the name of the heirs" of H., at $15.00 per acre, and the attorneys agreed to perfect title to the property, make the necessary surveys and furnish the purchaser with an abstract of title without charge. The agreement then set out the terms of the sale, and finally it was understood that unless the purchaser should "be able to obtain a good and clear title to the property this agreement is to be void."

   *Held:* That whether the agreement was construed as written, or in the light of the surrounding facts and circumstances, under it plaintiff agreed to buy the land from the heirs of H. and not from defendants, and that defendants agreed to perfect title, etc., but did not contract to sell the land to plaintiff, their compensation being the difference between $15.00 per acre and any less sum at which they obtained the land, and that defendants were not liable to plaintiff for their failure to obtain the land at the price agreed.

Error to a judgment of the Circuit Court of Orange county, in an action of assumpsit. Judgment for defendants. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*John S. Chapman* and *Allen, Walsh & Michie*, for the plaintiff in error.

*Grimsley & Miller* and *E. H. DeJarnette, Jr.*, for the defendants in error.

WEST, J., delivered the opinion of the court.

On October 6, 1917, W. L. Utz, George S. Shackelford and Virginius Shackelford entered into the following memorandum of agreement:

"This memorandum of Agreement, between W. L. Utz, of the first part, and Geo. S. and V. R. Shackelford, of the second part,

"Witnesseth: That the said party of the first part has agreed to buy the property now standing in the name of the heirs of Julian A. Hall, situate near Barboursville, and adjoining the property of Mrs. Ruddle, to contain two hundred acres (200), being the property shown on the plat made by Andrew Briggs as containing 222.73 acres, but the 22.73 acres are to be cut off by a beginning line at the persimmon tree and running to the back line of the place so as to add that acreage to the property of Mrs. Ruddle, and the 200 acres are to be subject to a twenty foot right of way following the line shown on said plat or an outlet following that general direction, and equally as convenient for Mrs. Ruddle. The price of said property is to be $15.00 per acre.

"And the said parties of the second part do hereby agree and bind themselves that they will proceed forthwith to perfect title to the said property, and that they will make the necessary survey and furnish the pur-

chaser with an abstract of title without any cost or charges to him. The terms are to be one-third cash, to be paid when the deed is executed and delivered to the purchaser conveying him a good title, and the balance secured in two equal payments with interest from date of deed, payable three and five years after date, with privilege of anticipation, interest payable semi-annually.

"It is understood that unless the said purchaser shall be able to obtain a good and clear title to the property, this agreement is to be void.

"And the said purchaser has paid to the said parties of the second part the sum of $10.00 on account of the purchase price, the receipt whereof is hereby acknowledged.

"This agreement is executed in duplicate.

"Witness the following signatures and seals.

"GEO. S. SHACKELFORD        (Seal)

"V. R. SHACKELFORD        (Seal)

"W. L. UTZ        (Seal)"

In July, 1918, Utz instituted an action of assumpsit against George S. Shackelford and Virginius Shackelford to recover damages for their breach of the agreement. He claimed as damages the sum of $1,470.80, the difference between the agreed purchase price, $2,953.20 (being 196.88 acres at $15.00 per acre), and $4,425, the amount actually paid by him for the land when it was sold at public auction.

Before the case was disposed of George S. Shackelford, one of the defendants, died. The suit was revived against his administratrix, Mrs. Virginia R. Shackelford, and under section 6165 of the Code ordered by the court to proceed in her name as such, as a separate action from that against Virginius Shackelford, the surviving defendant. The two cases, by

consent of parties, were consolidated and heard together by the court without the intervention of a jury. On September 28, 1921, the court entered a final judgment for the defendants, to which this writ of error was awarded.

The record and briefs raise three questions: (1) Did the memorandum of agreement bind the Shackelfords to convey the land, at all events, to Utz for $15.00 per acre? (2) If so, is the contract void because contrary to public policy? (3) If question one is answered in the affirmative, can the plaintiff recover substantial damages of the defendants?

In our view it will only be necessary to answer the first question.

## The Memorandum of Agreement

[1] Written contracts, where unambiguous, should be construed as actually written; if ambiguous, the court will look to the surrounding facts and circumstances for assistance in ascertaining the proper construction to be placed upon them.

The agreement in the instant case is ambiguous and we shall be forced to construe it in the light of the surrounding circumstances.

The land in controversy once belonged to the estate of one Jno. W. Hall, and was later owned by his two children, Julian A. Hall and Mrs. Ruddle. These two executed a partition deed dividing the land between them. Julian A. Hall died and Mrs. Ruddle, claiming there was an error in the survey, instituted a suit against Julian A. Hall's heirs, to correct the deed, which was pending for several years.

W. L. Utz came to Geo. S. Shackelford and Virginius Shackelford to ascertain whether a purchaser of the

Julian Hall land could secure a good title thereto, and stated that if he could *he* would like to buy it. Utz knew the property belonged to the Hall heirs and not to Shackelford & Shackelford, and that the Shackelfords, being attorneys, were probably in a position to get the land for him and agreed to buy it at $15.00 per acre. Utz was informed by Virginius Shackelford that George E. Walker, of Charlottesville, was attorney and agent for the Hall heirs, that he thought the Ruddle-Hall suit could be settled, and that he would look into the matter and advise him later. Shackelford saw Mr. Walker who represented the Hall heirs and he agreed, subject to the approval of a Mr. Hall, an uncle and the authorized agent of the Hall children, to recommend to the court to confirm a sale of the property at $2,150.00. Later Utz met Virginius Shackelford by appointment and walked over the property. Shackelford went in the house to see Mrs. Ruddle, a regular client of his firm, who lived on part of the original Hall tract, and explained to her that he was making arrangements by which she would get the twenty-five acres she claimed and the right of way she wanted. Utz also walked over the twenty-five acres, which were to be cut off for Mrs. Ruddle, and agreed that it was satisfactory. Utz was informed that it would be necessary, on account of the interest of the infants, for the court to confirm the sale of the property and that Mr. Walker had promised to have it confirmed to Utz at the next term of the court at $2,150.00, Utz agreeing to settle with the Shackelfords at $15.00 per acre for the number of acres he secured title to. Under these circumstances, the memorandum of agreement was drawn up and signed and Utz gave Shackelford his check for $10.00 which the latter intended to present along with the bid to the court. Utz cared not whether the sale was confirmed to him

or to the Shackelfords, provided the price at which it was confirmed did not exceed $15.00 per acre.

Sometime thereafter attorney Walker wrote Shackelford that a number of people had offered more than $2,150.00, and that, in view of the fact that it was infants' property under the control of the court, he was compelled to present to the court the best price obtainable. Utz was promptly informed of the situation and the $10.00 check was returned to him, the understanding being that if the court did not confirm the sale at $15.00, or less, per acre, the contract was to be void. Shackelford also told Utz he would have a right to bid on the property when sold by the court at public auction and that he was willing to assist him as far as he could without any expense to him. Utz talked the matter over very pleasantly with Shackelford several times and on the day of the sale Shackelford & Shackelford bid on the property up to $15.00 per acre for Utz. Utz began to bid on the property at $3,850.00 and it was knocked out *to him* at $4,425.00. It is immaterial that at the time the bid of $2,150.00 was agreed on Walker understood he should look primarily to Shackelford & Shackelford for the money.

From the surrounding facts and circumstances it is manifest that Utz wanted to purchase the land owned by the Hall heirs, and agreed to buy the same through the court at not to exceed $15.00 per acre. Shackelford & Shackelford, as his attorneys, agreed to endeavor to settle the old suit of *Ruddle* v. *Hall* which had kept this land in court for many years, to perfect the title to the land for Utz, to have the land surveyed and furnish an abstract of title to Utz, and if the court did not confirm the sale of the land to Utz at $15.00 or less per acre, the agreement was void. Utz knew Shackelford & Shackelford did not own the land and admits that he understood the sale was to be confirmed to him by the court.

There is no material conflict in the evidence.

The memorandum of agreement does not in terms bind Shackelford & Shackelford to sell the land to Utz at any price, or under any circumstances. In the first paragraph of the agreement Utz agrees "to buy the property now standing in the name of the heirs of Julian A. Hall." the "price of said property is to be $15.00 per acre." Utz does not agree to buy *from* Shackelford & Shackelford; nor do Shackelford & Shackelford agree to *sell* the property to Utz. Their agreement was as follows: "And the said parties of the second part (Shackelford & Shackelford) do hereby agree and bind themselves that they will proceed forthwith to perfect title to said property, and that they will make the necessary surveys and furnish the purchaser with an abstract of title without any costs or charge to him." The evidence shows that they have performed every obligation imposed upon them by the agreement.

The clause, "unless the purchaser shall be able to obtain a good and clear title to the property this agreement is to be void," was intended for the protection of both parties, and clearly meant that unless the title could be perfected at $15.00 per acre the contract would be null and void as to both parties. Even though the title were perfect, it cannot be said that the agreement bound Utz to take the property at a price in excess of $15.00 per acre, nor that it bound the Shckelfords to pay more than $15.00 per acre for it for Utz at the court sale.

[2] Whether we construe the agreement as written, or in the light of the surrounding facts and circumstances, we reach the conclusion that Utz agreed to buy the land from the Hall heirs subject to the approval of the court; that Shackelford & Shackelford agreed to perfect the title and have necessary surveys made, and fur-

nish abstract of title, but did not contract to sell the land to Utz; that their compensation was contingent and was to be the difference between $15.00 per acre and any less sum at which the court confirmed the sale; and that there is no liability on Shackelford & Shackelford in favor of Utz for their failure to secure the land for him at $15.00 per acre.

It follows that there can be no recovery by Utz and that the judgment complained of must be affirmed.

*Affirmed.*