# Richmond

## Yukon Pocahontas Coal Company, et als. v. F. M. Ratliff, et als.

March 8, 1943.

Record No. 2586.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Browning and Eggleston, JJ.

The opinion states the case.

*Greever & Gillespie, F. H. Combs, Burns & Lively, Landon C. Bell* (Columbus, Ohio) and *William B. Hogg* (Columbus, Ohio), for the appellants.

*S. H. & George C. Sutherland, Roland E. Chase* and *W. A. Daugherty* (Pikeville, Ky.), for the appellees.

CAMPBELL, C. J., delivered the opinion of the court.

This is the second appeal of this cause to this court.

The facts and circumstances alleged in the original bill filed by appellants are set out in detail in the opinion by Mr. Justice Spratley on the former appeal (*Yukon Pocahontas Coal Co. v. Ratliff*, 175 Va. 366, 8 S. E. (2d) 303), and, therefore, it is unnecessary to restate them.

The decree entered by this court upon the former hearing reversed the decree of the lower court sustaining the demurrer of appellees to the original bill, and remanded the

cause "for such further proceedings as may be necessary and proper."

The trial court, in conformity with the decree entered here, proceeded to adjudicate the rights, privileges, interests and easements of the parties litigant, arising under the provisions of a deed executed by James M. Ratliff, on the 23rd day of September, 1904, to Buchanan Coal and Coke Company, the predecessor in title of appellant, Yukon Pocahontas Coal Company, and entered a decree in the nature of a declaratory judgment defining the respective rights of the parties under said deed. In brief, the trial court held that appellants' mining rights were limited to those expressly *eo nomine* granted in the deed; that the reservations set forth in the deed were valid; that the boundaries thereof were sufficiently set forth; and that appellants were not entitled to an injunction restraining appellees from utilizing the surface of the 118 acres, as set forth in the bill of complaint.

The pertinent part of the Ratliff deed, which is the subject of controversy, reads as follows:

"WITNESSETH: That for and in consideration of Eleven Hundred and Seventy Dollars, cash in hand paid the receipt of which is hereby acknowledged, and a bond for Twenty-Three Hundred and Forty Dollars bearing even date herewith, executed by Buchanan Coal and Coke Company, Incorporated, and payable to said James M. Ratliff on or before three years from date, and secured by a vendor's lien on the property hereby conveyed and also in consideration of the delivery of One Hundred and Forty Shares of the common stock of Buchanan Coal and Coke Company, Incorporated, to said James M. Ratliff, all of which is hereby acknowledged, the said parties of first part do grant, bargain, sell and convey unto the party of the second part, its successors or assigns, by good and sufficient title with general warranty, the following described property, rights, privileges and interests in property, to-wit:

"All coal, oil, gas, found in, on and under the following described tract or parcel of land, and all timber from sixteen inches in diameter and under on Thirty-Five acres of said

land, lying on Mill Ridge, which may be standing on said land at the beginning of mining operation, together with the rights of ways for excavating and mining said land, and sufficient surface for making drift mouths, air-shafts, wells and sufficient land on which to erect tipples, tanks, pipe lines, washers, pumping stations, roads, and sidings, tram roads, incline roads, chutes, and such other devices as is necessary for the successful mining and manufacturing and removing said coal, oil, gas on or underlying said tract of land herein described, or any adjacent tracts that the said party of the second part, or assigns may own or lease; and the said parties of the first part, further grant unto the said Buchanan Coal and Coke Company, its successors or assigns, the right to take the entire body or bodies of coal, oil and timber herein conveyed off, through, under and over said lands without leaving any support for overlying strata, and without liability for any injury which may result from breaking of said strata, and the right of mining and removing said coal herein conveyed, and of ventilating and draining the mines by such openings, ways and structures as shall be necessary for the safe, convenient, and economical mining of said coal, and oils, and the further right of *my* mining and transporting the coal of and from other lands through and by means of the openings, ways and structures, upon and in the said lands as well as over same; also the right to take and use so much water from said land as said mining purposes may require.

\* \* \* \* \* \* \*

" \* \* \* The parties of the first part reserve one half an acre around the graveyard and also the rights to use coal for domestic purposes and also reserve the overland privileges over the bottom land along Levisa River and two acres around the dwelling."

The acreage conveyed was 702 acres but the number of acres specifically involved is 118 acres.

The records and briefs are voluminous, containing approximately one thousand pages. All phases of mining operations are touched upon in the depositions and the brief of appellants contains an attractive pen picture of a modern mining town, based upon the evidence of experts. The brief of appellees deals at length with the practical construction of the deed as shown by the acts and conversation of the prior grantors and grantees of the property.

As we comprehend the case, it is, in its last analysis, simply boiled down to a proper construction of the deed, tested by the general rules of construction applicable. In other words, the respective contentions of the parties are to be measured by the "four corners of the deed."

The main contention of appellants is clearly and succinctly stated in the former opinion of Mr. Justice Spratley, as follows:

"That the mining rights, privileges and easements conveyed in the deed vested in the appellants not only those expressly granted, but also any and all other mining reasonably necessary for the mining and manufacture of the coal and minerals acquired, including the right to construct and maintain stores, warehouses, supply houses, miners' homes, hospitals, gardens and pastures for themselves and their employees, and rights of way for ingress and egress upon and below the surface of said land;

"That the defendants are dividing the surface of a portion of land described in said deed into town lots, streets and alleys, selling and conveying the lots, erecting and permitting the erection of buildings and other improvements thereon; that these acts are inconsistent with any use thereof for mining purposes, and are destroying the easements, rights and privileges of the appellants and, in effect, are excluding them from any use of the surface of the land, in violation of the rights, privileges and easements expressly and impliedly conveyed to them by the deed;

"That the rights and privileges of the appellants extend to every portion of the Ratliff land, and that the reservations in the deed are either void or should be definitely fixed and

determined; * * * * ." *Yukon Pocahontas Coal Co.* v. *Ratliff*, 175 Va. 366, 369, 8 S. E. (2d) 303.

The trial court held this contention untenable.

The rule applicable to the construction of the deed is stated in *Virginian Ry. Co.* v. *Avis*, 124 Va. 711, 98 S. E. 638. In delivering the opinion of the court, Judge Kelly said:

"The purpose of all written contracts and conveyances is to say what the parties mean; and the only legitimate or permissible object of interpreting them is to determine the meaning of what the parties have said therein. In doing this, the language used is to be taken in its ordinary signification unless it has acquired a peculiar meaning with reference to the subject matter or unless the context plainly shows that such language is used in some other peculiar sense. If, when so read, the meaning is plain, the instrument must be given effect accordingly. These propositions are familiar and elementary and they embody the fundamental rule of construction to which all others are subordinate and subservient."

See also, *Ryan* v. *Krise*, 89 Va. 728, 17 S. E. 128; *London Bros.* v. *National Exchange Bank*, 121 Va. 460, 93 S. E. 699; *Cranes Nest Coal, etc., Co.* v. *Virginia Iron, etc., Co.*, 105 Va. 785, 54 S. E. 884; *Utz* v. *Shackleford*, 138 Va. 590, 121 S. E. 880.

When we look to the Ratliff deed, it is apparent that the clear language of the instrument conveys to the grantee fee simple title to the coal, oil and gas on and under the land, and, in addition thereto, certain timber on thirty-five acres of land designated for mining purposes. It then sets forth that the grantee is to have rights of way for excavating and mining said land; sufficient surface for making drift mouths, air-shafts, wells and sufficient land on which to erect tipples, tanks, pipe lines, washers, pumping stations, roads and sidings, tramroads, incline roads, and chutes and other devices necessary for the successful mining and removing of minerals from this and adjacent tracts. Then follow the rights to mine the coal, etc., without leaving subjacent support for the

overlying strata; the right to ventilate and drain the mines by such openings, ways and structures as shall be necessary for the safe, convenient and economical mining of said coal, etc., the right to the use of all necessary water for mining purposes. There can be no question that these enumerated rights have been specifically granted.

It is argued strenuously by appellant that the use of the terms "devices" and "structures" in the deed clearly warrants the conclusion that the contention urged is correct; and that it is essential, in order to operate a mine economically, etc., under modern conditions, that miners' houses, hotels, hospitals, gardens, etc., should be supplied the employees.

While we agree that such adjunct may be essential to mining operations, they are in no sense such mining devices and structures as are contemplated by the language of the deed. In order to sustain the contention of appellants, the court would have to add to the enumerated rights other rights not specifically set forth in the deed. This, by the accepted rule of construction, we are not permitted to do.

In 16 Am. Jur., page 537, the applicable rule is thus stated:

"In the construction of deeds, the rule that the expression of a particular subject implies the exclusion of subjects not enumerated, or, *expressio unius est exclusio alterius*, has been held to be applicable. Hence, if a deed covers particular or express matters, the intention may be inferred to exclude other subjects which the general words of the deed may have been sufficient to include. Similarly, in the construction of deeds and what passes, thereunder, if after an enumeration of particulars, there is a sweeping clause comprising all other things, the scope of such a clause is restricted to things, within the description, of the same kind as the particulars enumerated."

Appellants have cited no authority directly in point to sustain their contention. However, we think the case of *Clayborn* v. *Camilla Red Ash Coal Co.*, 128 Va. 383, 105 S. E. 117, 15 A. L. R. 946, is applicable. In that case Judge Kelly said:

"When a surface owner conveys the coal on his land, whether or not he specifies, as was done in this case, that the grantee shall have the right to mine and remove the same, he knows that such right must exist if the grantee is to get any benefit of his estate, and it makes no difference whether he expressly grants the right to mine and remove the coal (if only these general terms are used), or leaves such right to be implied by law; but when nothing more is said than that the coal is granted, or that the coal is granted with the right to mine and remove it, nothing but the coal and the right to remove it ought to be understood to pass by the deed. If the coal owner expects more in connection with his easement for removing the coal, he ought to stipulate for it. * * *"

It follows, therefore, that we are of the opinion that the ruling of the trial court upon this phase of the case is without error.

This conclusion disposes of the primary question in issue and would dispense with further consideration of the case but for certain contentions of appellants.

It is contended that the trial court erred in failing and refusing to hold invalid the reservation of "the overland privileges over the bottom land along Levisa River," because of its unascertainable boundaries. This contention is fully disposed of by this allegation in appellants' bill of complaint, which reads:

"Complainants aver and charge that the bottom land on the whole of said 702 acre tract comprises but 31.5 acres; and that on the 320.60 acres (part of said 702 acre tract) within the leasehold aforesaid of Red Jacket Coal Corporation, there are but 15.5 acres of bottom land of which 2.5 acres are occupied by the public road."

It is further argued that the reservation is indefinite in regard to the privileges reserved; that it was never intended as anything more than a personal right of passage.

This contention is untenable for the reason that while the term "reservation" is used, the language clearly indicates that the grantor meant to "except" the bottom land from

the burdens appellants seek to impose upon it. Likewise, there is no merit in the contention that "the reservation of one-half acre around the graveyard was not of the fee." The language clearly imports the retention of the fee, and if it should become necessary at any time to determine the boundaries of the one-half acre tract, this can readily be accomplished by a survey thereof.

It is further argued that the trial court's construction of the deed is subversive of all mining rights which appellants derived under the Ratliff deed. This contention harks back to Yukon's claim that the property cannot be successfully and economically mined unless it is permitted to erect miners' houses, hotels, hospitals, etc., upon the land for the benefit of its employees. To sustain this contention would mean that, though appellants did not purchase the surface, they would be permitted (if they deemed it necessary for the successful mining of the minerals conveyed), to erect the buildings heretofore enumerated, and thereby appropriate to its use every foot of the surface.

In *Williams* v. *Gibson,* 84 Ala. 228, 4 So. 350, 5 Am. St. Rep. 368, we find the applicable doctrine stated thus:

"The incidental rights of the miner which are appurtenant to the grant of the mineral, are to be gauged by the necessities of the particular case, and therefore vary with changed conditions and circumstances. He may occupy so much of the surface, adopt such machinery and modes of mining and establish such auxiliary appliances as are ordinarily used in such business, as may be reasonably necessary for the profitable and beneficial enjoyment of his property. But he is not limited, as we have already said, to such appliances as were in existence when the grant was made, but may keep pace with the progress of society and modern inventions."

It is to be observed that the rights, mentioned in the above quotation as falling within the grant, bear no relation whatever to the right to erect such structures as hotels, hospitals, miners' homes, etc. The "structures" and "devices" contemplated by the grantor and grantee in the deed are such "structures" and "devices" as pertain strictly to

mining operations, and the necessity for their erection and installation "is a question of fact to be determined from the evidence in each particular case." See Lindley on Mines (3rd ed.), page 2005.

Appellants also contend that the defendants have heretofore made, and are now making, conveyances of parts and parcels of the surface, upon which dwelling houses and other buildings have been already erected or are in course of erection; that these conveyances constitute a cloud upon its title, for the reason that they contain no proper mention or reservation of the rights owned by appellants.

There is no merit in this contention. An inspection of the various conveyances reveals that, without exception, this provision is contained therein: "There is excepted and reserved from the operation of this conveyance whatever mineral rights and privileges that have heretofore been conveyed."

Finally, it is contended that the trial court erred in refusing to hold that "the right to use coal for domestic purposes" was terminated upon the death of James M. Ratliff.

This contention is well founded. The language of the deed clearly indicates the reservation of a personal right which since the death of Ratliff had ceased to exist.

The declaratory decree entered by the trial court will therefore be affirmed in part and reversed in part, and this court will enter a decree in conformity with the views expressed in this opinion.

*Affirmed in part and reversed in part.*