COURT OF APPEALS OF VIRGINIA

Present:   Judges Fulton, Ortiz and Lorish
Argued at Norfolk, Virginia


JILL GENDERS

MEMORANDUM OPINION* BY
v.        Record No. 0137-24-1            JUDGE LISA M. LORISH
SEPTEMBER 16, 2025

ROPE LANE, LLC


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Steven C. Frucci, Judge[1]

Brandon L. Ballard (Elizabeth J. Davis; Legal Aid Society of Eastern
Virginia, on brief), for appellant.

No brief or argument for appellee.


Jill Genders appeals from the circuit court's order awarding judgment and possession to

Rope Lane, her former landlord, after Rope Lane filed an unlawful detainer.  The crux of the case is

whether Rope Lane was allowed to give notice of termination of the lease through certified mail.

Genders argues that certified mail was not permitted under the Virginia Residential Landlord and

Tenant Act (VRLTA), so the court erred in finding that Rope Lane had satisfied the notice

requirement.  We affirm the circuit court because Genders conceded that certified mail was

permissible under the terms of her lease with Rope Lane, waiving any argument to the contrary on

appeal, and nothing in the VRLTA prohibits the parties from agreeing to alternate forms of notice.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Judge Westbrook J. Parker presided over the motion to require rent to be escrowed.
Judge Steven C. Frucci presided over the unlawful detainer trial prior to his election to this
Court.

Because we reach this conclusion, we need not evaluate the court's finding in the alternative that Genders's good faith defenses failed to satisfy the requirements of Code § 55.1-1242.

## BACKGROUND

On August 17, 2020, Jill Genders signed a residential lease at 3809 Rope Lane in Virginia Beach, Virginia with Rope Lane, LLC. The lease commenced on August 29, 2020, with a monthly rent of $1,400. Either party was authorized to terminate the tenancy by "giving the other party written notice at least Thirty (30) days before the end of such Term." The lease provided that "[i]f no such notice of termination is given, the . . . lease shall be extended for self-renewing terms of month to month duration until either party gives notice to terminate . . . unless [the] Lease is terminated in accordance with any other applicable provision of [the] Lease or Virginia law." The lease also provided that, "[a]ll notices shall be provided in writing and may be given by regular mail or hand delivery, with the party giving notice retaining a certificate of mailing or delivery of the notice as the case may be."

In early 2023, Genders noticed physical defects in the home and contacted the city of Virginia Beach about them in February 2023. In April, Genders filed a tenant's assertion in the General District Court of the City of Virginia Beach because the issues had not been resolved. She paid her monthly rent into the court's escrow account from April to July of 2023 while the assertion was pending.[2]

On May 23, 2023, Rope Lane sent a "Notice to Quit" to Genders's residence by certified mail. The notice stated that her tenancy "is hereby terminated as of June 30, 2023" and that she would be required to vacate by that date. The notice also clarified that it "is intended as a thirty . . .

---

[2] Pursuant to Code § 55.1-1244(B)(2), the tenant making the assertion must show that she "has paid into court the amount of rent called for under the rental agreement, within five days of the date due under the rental agreement, unless or until such amount is modified by subsequent order of the court under this chapter."

day legal notice for purposes of recovering possession of the property . . . in accordance with the [VRLTA §] 55-248.37."[3]  But Genders was not home at the time the notice was delivered.  As such, USPS left a "Certified Mail Receipt" indicating that it attempted delivery of a piece of certified mail and that she could pick it up at the post office.  The note did not say who sent the certified mail or what it contained.  The envelope containing the notice was eventually marked as "unclaimed" and "return[ed] to sender" on July 12, 2023.

Rope Lane filed an unlawful detainer action in the general district court in July 2023 based on Genders's failure to vacate the property after non-renewal and her alleged nonpayment of rent from April through July of that year.  On August 22, the district court heard both Genders's tenant's assertion and Rope Lane's unlawful detainer action.  The court dismissed the tenant's assertion and ruled in favor of Rope Lane on the unlawful detainer, awarding Rope Lane possession of the property and the amount of rent that had been held in escrow.  Genders appealed to the circuit court.

On October 19, 2023, while Genders's appeal was pending, Rope Lane filed a "complaint for [an] unlawful detainer" in the circuit court on the grounds that Genders was "unlawfully withholding possession," seeking an order of possession and damages incurred "[a]s a result of [Genders] holding over and failing to vacate the premises after the termination of the rental term." Rope Lane sought 150% of Genders's monthly rent due from September to November 2023 in the amount of $6,300, and attorney fees and court costs in the amount of $7,653.53.  Genders did not pay rent into escrow from September to December of 2023, the months during which the unlawful detainer was pending in the circuit court.

On November 27, Genders appeared at trial and requested a continuance.  The trial was rescheduled for December 22.  In response to Genders's request for the continuance, and pursuant to

---

[3] Code § 55-248.37 is the prior version of Code § 55.1-1253, which governs termination of periodic tenancies and holdover remedies.  *See* 2013 Va. Acts ch. 563.

Code § 55.1-1242, Rope Lane moved the circuit court to order Genders to pay $5,600 (four-months' rent) into escrow, and to award Rope Lane possession of the premises if she failed to pay the requisite amount within one week.

On December 15, 2023, the circuit court held a hearing on Rope Lane's motion for rent to be escrowed. At this hearing, Genders and Rope Lane only proffered evidence and did not call witnesses. The court ordered Genders to pay $5,600 into escrow within one week of the order, by noon on December 22. If she failed to pay, the court warned that it would "enter judgment" and an order of possession in Rope Lane's favor. Genders objected to the order "for the reasons stated at the hearing on [December 15] and because requiring rent escrow after [she] asserted good faith defenses expressly violates section 55.1-1242 of the Code of Virginia."

On December 18, Genders filed a motion to reconsider the court's order requiring her to pay four months' rent into escrow because she had asserted "good faith defense[s]" within the meaning of Code § 55.1-1242. Specifically, Genders asserted that (1) she was never served with a lease termination notice and (2) "any act to terminate [her] tenancy was a retaliatory act" under § 55.1-1258. On notice, Genders attached a picture of the envelope, containing the notice to quit, that stated that the notice sent by certified mail went unclaimed, as well as an image of the USPS tracking information showing that the envelope had been "return[ed] to sender."[4] Genders asserted that, to terminate a month-to-month tenancy under Code § 55.1-1253(A), a landlord must serve a written notice at least 30 days before the next payment of rent is due, and Rope Lane had failed to

---

[4] Genders did not proffer the envelope to the court during the December 15 hearing because Rope Lane maintained possession of it before the hearing. Additionally, during the hearing, opposing counsel only allowed her to see the *envelope's exterior*, not the enclosed notice itself.

do so here.  Thus, she argued that because the court relied on "incorrect facts"[5]—that Genders purportedly "refused" to accept the notice—in declining to find that she had asserted lack of notice as a "good faith defense," the court should vacate its order and allow her to present evidence "even if she is unable to pay the rent escrow prior to the hearing on December 22, 2023."  On retaliation, Genders contended that even if Rope Lane had sent a notice, its decision to terminate the lease would be prohibited under Code § 55.1-1258(B) because such an action would be retaliatory toward her tenant's assertion motion.  The court denied her motion to reconsider.

On the morning of December 22, 2023, the day by which Genders was ordered to pay four months' rent into escrow, the unlawful detainer went to trial in the circuit court.  At trial, Rope Lane's property manager, Helen Merjos, testified that the notice to quit was sent to Genders on May 23, 2023 by certified mail.  Merjos admitted that she was aware that the notice had been returned to sender.  Genders testified that she never received a notice that her lease was being terminated.  She did, however, acknowledge receipt of the note from USPS saying that it had attempted delivery of a piece of certified mail and that she could pick it up at the post office.  According to Genders, the first time she learned about the unlawful detainer action was when the general district court heard her tenant's assertion in August 2023.  Genders also testified that at the general district court trial, she only saw the envelope that allegedly contained the notice; the first time she saw the notice itself was that day in the circuit court, when Rope Lane introduced it into evidence.

Rope Lane then called one of the principals of Rope Lane, LLC, William Harris, who testified that he sought to terminate Genders's tenancy due to his deteriorating health and resulting need to sell the property.  Finally, Lisa Rayburn, the code enforcement inspector for the city of

---

[5] At the December 15 hearing, Rope Lane "asserted that it had sent a termination notice to [Genders] and that [she] had refused to accept it."  Genders argued that this was false and that she did not receive the notice that was sent to her by certified mail because she was not home when USPS tried to deliver it.  Although USPS left a note for Genders to reschedule delivery of an item addressed to her, the notice to quit was returned to Rope Lane when she failed to do so.

Virginia Beach, testified that several months earlier, the property had numerous violations of the building code. She said that, upon reinspection, numerous items had been repaired prior to, or on, May 25, 2023.

During argument, Rope Lane asserted that Genders's refusal to pick up her certified mail could not be a defense to her failure to receive notice of lease termination. Rope Lane also contended that Genders had known that Rope Lane intended to terminate the lease since at least the initial filing of the unlawful detainer and therefore could not argue that she did not have notice.

On the notice issue, the court concluded that "notice was given in writing . . . it was unclaimed. It was not rejected." Instead, it found that Genders "didn't want to go pick it up. She knew about it, but she did not want to pick it up." The court found that the rationale given for not picking up the notice—that she has anxiety and did not want to go into the post office—was not "credible" because she was willing to go to the bank to get certified funds to pay rent. Although the court found that "the notice that was given was adequate," and that Rope Lane was therefore entitled to judgment, it also offered an alternative basis for its ruling. "In the alternative," the court found that "the defendant ha[d] not complied with Judge Parker's ruling" because it was "clear from her testimony and from the posture of this case that she [wa]s not going to pay the . . . $5,600 [pursuant to § 55.1-1242]." As part of that finding, the court ruled that the defenses raised against paying rent into escrow were not "in good faith," stating, "I don't find either one of them to be persuasive, so I think that 55.1-1242 did apply." The court awarded Rope Lane possession and the four months of rent in escrow, in addition to $2,500 in fees and $67 in court costs. Genders filed a motion to reconsider, arguing that the notice by certified mail was contrary to the VRLTA because

it only authorized notice by "regular mail or hand delivery." The court denied her motion to reconsider.[6] Genders now appeals.

## ANALYSIS

Genders assigns error to the circuit court's decision to grant Rope Lane a judgment of possession. She first argues that Rope Lane's "method of serving the termination notice—certified mail—was not an authorized means of service under the Virginia Residential Landlord and Tenant Act" and, second, that Rope Lane "failed to prove, by a preponderance of the evidence, that Appellee gave or served the termination notice" to Genders before instituting an unlawful detainer action. She urges this Court to reverse the circuit court's award of possession, attorney fees, costs, and past due rent. We disagree because the lease, not VRLTA, determines permissible forms of service in this case. And because both Genders and Rope Lane agreed below that the lease agreement permits the use of certified mail, the circuit court's finding that Rope Lane satisfied the notice requirement to proceed with the unlawful detainer is not without support.

A. VRLTA does not prohibit the use of certified mail as a method of delivering notice of termination, and thus, parties may contract to use it.

"Whether a lower court has correctly defined and applied a legal standard is a question of law reviewed de novo," *Alexandria City Pub. Sch. v. Handel*, 299 Va. 191, 196 (2020), as are

---

[6] After the court denied Genders's motion to reconsider, she filed a proposed statement of facts of the December 15 hearing along with the notice required by Rule 5A:8 that the statement of facts must be presented to the trial court "no earlier than 15 days nor later than 20 days" after the day of filing. On February 20, 2024, Rope Lane filed a written statement of facts of the hearing held on December 15, 2023. Rope Lane's statement did not include the accompanying notice that "such statement will be presented to the trial judge no earlier than 15 days nor later than 20 days after such filing." On February 22, Judge Parker signed Rope Lane's statement of facts and rejected Genders's statement of facts. Genders then filed a motion to reconsider its decision to sign Rope Lane's statement of facts based on the lack of notice attached to it and filed a notice of objections based on alleged inaccuracies. She also argued that Rope Lane missed the 15-day window for filing objections to a proposed statement of facts and should not have been able to assert a competing statement of facts summarizing the same hearing. The court denied her motion.

- 7 -

"issues of statutory interpretation," *Taylor v. Commonwealth*, 77 Va. App. 149, 162, (2023).

"When the language of a statute is unambiguous, we are bound by its plain meaning." *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104 (2007). "In interpreting [a] statute, 'courts apply the plain meaning . . . unless the terms are ambiguous or applying the plain language would lead to an absurd result.'" *Taylor v. Commonwealth*, 298 Va. 336, 341 (2020) (alterations in original) (quoting *Baker v. Commonwealth*, 284 Va. 572, 576 (2012)).

The VRLTA sets default rules for the landlord-tenant relationship. Genders argues that "VRLTA plainly sets forth the only permissible forms of serving notices, none of which are certified mail." But Code § 55.1-1204(A) specifically permits parties to a lease to "include in a rental agreement terms and conditions not prohibited by this chapter or other rule of law, including . . . *requirements for notice of intent to vacate or terminate the rental agreement*, and other provisions governing the rights and obligations of the parties." (Emphasis added). Since parties are expressly allowed to include other conditions for "requirements for notice of intent to vacate or terminate the rental agreement," the question is whether the VRLTA otherwise prohibits the parties from agreeing to use certified mail for these purposes.

Genders points to nothing in the VRLTA that prohibits parties from agreeing to use certified mail, and we cannot find anything either. The VRLTA defines "notice" and "written notice" as follows:

> "Notice" means notice given in writing by either regular mail or hand delivery, with the sender retaining sufficient proof of having given such notice in the form of a certificate of service confirming such mailing prepared by the sender. However, a person shall be deemed to have notice of a fact if he has actual knowledge of it, he has received a verbal notice of it, or, from all of the facts and circumstances known to him at the time in question, he has reason to know it exists. A person "notifies" or "gives" a notice or notification to another by taking steps reasonably calculated to inform another person, whether or not the other person actually comes to know of it. If notice is given that is not in writing, the

- 8 -

person giving the notice has the burden of proof to show that the
notice was given to the recipient of the notice.

Code § 55.1-1200.

Although Code § 55.1-1200 requires notice to be given by regular mail or hand delivery as a baseline, it does not prohibit parties from agreeing to additional or different notice requirements.

Other portions of the VRLTA, by contrast, expressly state that landlords or tenants "shall not" agree to certain things. For example, "[a] rental agreement shall not contain provisions that the tenant: 1. Agrees to waive or forgo rights or remedies under this chapter." Code § 55.1-1208(A)(1). There is no similar prohibitive language about how notices may be delivered. Given the VRLTA's specific provision allowing parties to agree to different terms about the receipt of notices of termination, we assume the General Assembly would have been express if it intended to take a particular form of service off the bargaining table entirely. *See Turner v. Commonwealth*, 295 Va. 104, 109 (2018) (explaining that, when interpreting a statute, we "presume that, in choosing the words of the statute, 'the General Assembly acted with full knowledge of the law in the area in which it dealt'" (quoting *Philip Morris v. The Chesapeake Bay Found.*, 273 Va. 564, 576 (2007))).

For these reasons, we reject Genders's first argument—that the court erred because the certified mail was not an authorized means of service under VRLTA.

B. Genders waived any argument that certified mail was not permitted by the lease agreement here.

Having established that VRLTA does not prohibit the parties from agreeing to allow service of notice by certified mail, the next question would naturally be whether the parties in fact agreed to the use of certified mail in their lease agreement. Had Genders argued that the lease's notice provision did not permit certified mail, this Court would be obligated to review the

- 9 -

lease de novo to determine whether it authorized certified mail.[7]  But Genders argued below, and on appeal, that certified mail was generally allowed under the lease but that the VRLTA nevertheless required any means of service to be "reasonably calculated" to reach its intended recipient.  Indeed, when the circuit court asked, "So [Rope Lane] can use certified mail if they want to because it's in writing," referring to the lease, Genders responded with "Yes."

The mere fact that Genders advanced a legal argument about the notice provision of the lease is not what requires this Court to adopt that position on appeal.  A concession of law is not binding because we "do not allow parties to define Virginia law by their concessions."  *Daily Press, Inc. v. Commonwealth*, 285 Va. 447, 454 n.6 (2013).  But here "we are dealing with a 'concession of law that qualifies . . . as a waiver.'"  *Commonwealth v. Holman*, 303 Va. 62, 75

---

[7] We note that the lease agreement requires that the termination notice be in writing and states that the parties "may" give notice by "regular mail or hand delivery."  As we have explained elsewhere, the word "may" must be interpreted in context; it sometimes sets forth non-exclusive options, but at other times limits the parties to the options that follow.  *See, e.g.*, *Rose v. Commonwealth*, 53 Va. App. 505, 514 (2009) ("[T]he use of the disjunctive word 'or,' rather than the conjunctive 'and,' signifies the availability of alternative choices." (alteration in original) (quoting *Lewis v. Commonwealth*, 267 Va. 302, 314-15 (2004))); *see also Yukon Pocahontas Coal Co. v. Ratliff*, 181 Va. 195, 203 (1943) (Under the negative-implication cannon, *expressio unius est exclusio alterius*, when "a[n] [instrument] covers particular or express matters, the intention may be inferred to exclude other subjects which the general words of the [instrument] may have been sufficient to include.").  Certified mail is of a different category than regular mail or hand delivery.  Instead, it is an extra service of USPS "that provides the sender with a mailing receipt, tracking history, and, upon request, electronic verification that a mail piece was delivered or that a delivery attempt was made."  *United States Postal Service Certified Mail Guidebook* 3 (May 2024).  The person to whom the mail piece is addressed must sign for the item to complete the delivery, otherwise the parcel is delivered back to the post office, and ultimately returned to the sender.  *Id.*  Because certified mail requires actual receipt and a signature for delivery, it is less effective for notice purposes.  *Jones v. Flowers*, 547 U.S. 220, 235 (2006) (explaining that "the use of certified mail might make actual notice less likely in some cases—the letter cannot be left like regular mail to be examined at the end of the day, and it can only be retrieved from the post office for a specified period of time").  Therefore, there may have been good reason for Genders and Rope Lane to agree that written notice may only be provided by regular mail or hand delivery—methods calculated to achieve delivery, regardless of whether the intended recipient is available to receive it—but we leave the interpretation of this type of lease language for another case given the waiver here.

(2024) (alteration in original) (quoting *Butcher v. Commonwealth*, 298 Va. 392, 395 (2020)).

*Holman* recently addressed this distinction in detail:

> This principle [that the court is not bound by a party's concession of law] must be distinguished . . . from an appellant's concession of law that qualifies either as a waiver for purposes of Rule 5A:18 or as an express withdrawal of an appellate challenge to a trial court judgment. In either scenario, we may accept the concession — not as a basis for deciding the contested issue of law, but as a basis for not deciding it.

303 Va. at 75 (alterations in original) (quoting *Logan v. Commonwealth*, 47 Va. App. 168, 172 n.4 (2005) (en banc)). In essence, "[w]hat is true for a waiver under Rule 5A:18 or when counsel expressly withdraws an appellate challenge to a trial court judgment is no less true of a litigant who seeks to approbate and reprobate." *Id.* Below, Genders's counsel determined—for better or worse—that their best strategy was to argue that certified mail was impermissible under the VRLTA. To that end, counsel chose not to contest whether that was a permissible method of notice under the terms of the lease and, in fact, conceded the opposite. And, in so doing, counsel prevented the court from intelligently ruling on that issue, thereby "waiving" their ability to raise that argument on appeal. Thus, "[t]he approbate and reprobate doctrine [would] preclude[] [Genders] from" arguing that certified mail is a permissible method of delivering notice on appeal, so it is not an argument we could take up on our own. *Id.* at 76.

Having determined that the VRLTA does not prohibit the parties from agreeing to use certified mail for notice, and that Genders conceded that the lease allowed certified mail, we turn now to whether the circuit court erred in finding that Rope Lane proved by a preponderance of the evidence that it provided notice of termination consistent with the requirements of the lease.

C. The circuit court did not err in finding that Rope Lane provided proper notice under the terms of the lease.

Although "[w]e . . . review the circuit court's application of law to undisputed facts de novo," "[t]he circuit court's findings of fact . . . will not be disturbed unless they are plainly wrong

- 11 -

or without supporting evidence." *Bistro Manila, LLC v. Alvah I LLC*, 83 Va. App. 300, 313 (2025) (alterations in original) (quoting *Chamberlain v. Marshall Auto & Truck Ctr., Inc.*, 293 Va. 238, 242 (2017)).

The notice provision of the lease requires notices to be "provided in writing and may be given by regular mail or hand delivery, with the party giving notice retaining a certificate of mailing or delivery of the notice as the case may be." As set out above, the parties agreed that certified mail qualified as a notice "provided in writing."

The undisputed facts here are that Rope Lane sent a notice of termination by certified mail to Genders. Rope Lane retained a certified mail receipt date stamped on May 26, 2023. But because Genders was not home at the time of delivery, USPS left her a notice advising her to go to the post office to retrieve the piece of mail.

The parties agree that Genders did not actually receive a copy of the notice of termination until after the unlawful detainer action commenced. Genders argues that, because she did not actually receive the notice, Rope Lane failed to meet its burden to show the notice was sent before filing for an unlawful detainer.[8] But the lease does not require any evidence that the notice was *actually received*, only that it was *actually sent*. Although Genders argues that the VRLTA requires actual notice, as we have established, its provisions do not apply here because the parties agreed to different notice provisions in their lease. But even if the VRLTA did apply, the language of the lease agreement closely mirrors its provisions. *Cf.* Code § 55.1-1200 (requiring a

---

[8] Because Genders argued that the VRLTA requires the intended recipient to have actual notice of lease termination (regardless of the lease provisions), the court concluded that Genders had, or should have had, actual notice, and granted the unlawful detainer. Although Genders argued that her failure to get the mail from the post office does not absolve Rope Lane from providing notice, the court discredited her arguments that she does "not go to the post office" because she has "severe anxiety" and does not "go into crowded places," because she was willing to go to the bank to get certified checks to pay rent. We do not review these findings because the only question is whether the service of notice complied with the lease, which does not require any evidence showing that Genders received the notice—only that it was sent.

certificate of service, not proof of actual receipt). Furthermore, the VRLTA defines "notifies" and "gives" notice to include "taking steps reasonably calculated to inform another person, whether or not the other person actually comes to know of it." *Id.*

Rope Lane satisfied the notice requirements of the lease by presenting sufficient evidence that it sent written notice of termination of Genders's month-to-month lease in May of 2023. Therefore, we affirm the circuit court's decision to grant Rope Lane possession.

Lastly, we address whether the court erred in imposing attorney fees and court costs. "[W]e review a trial court's decision to award attorney fees incurred prior to an appeal under the deferential abuse of discretion standard." *Sobol v. Sobol*, 74 Va. App. 252, 288 (2022). A landlord may bring an action for possession against a tenant who remains in possession "after expiration of the term of the rental agreement or its termination" without the landlord's consent. Code § 55.1-1253(C). If the landlord succeeds, he "may also recover actual damages, reasonable attorney fees, and court costs, unless the tenant proves by a preponderance of the evidence that the failure of the tenant to vacate the dwelling unit as of the termination date was reasonable." *Id.* We cannot say that the court's decision to give reasonable attorney fees of $2,500 was an abuse of discretion as it was a small percentage of the unpaid rent.

In sum, because VRLTA did not prohibit the use of certified mail, and Rope Lane provided notice to Genders according to the agreed upon terms of the lease, the circuit court did not err in awarding judgment to Rope Lane.

The circuit court made an alternative finding that Rope Lane was also entitled to an order of possession because Genders failed to make required payments into escrow during the pendency of the litigation and lacked any good faith defense to excuse her nonpayment. By statute, after a landlord "has filed an unlawful detainer action seeking possession of the premises," if the tenant is seeking a contested trial, the tenant must pay an amount equal to the

- 13 -

monthly rental payment into escrow each month. Code § 55.1-1242(A). The only exception is where the "tenant asserts a good faith defense," in which case "the court shall not require the rent to be escrowed." *Id.* If the tenant fails to "pay future rents due under the rental agreement into the court escrow account, the court shall, upon request of the landlord, enter judgment for the landlord and enter an order of possession of the premises." Code § 55.1-1242(C).

Because we affirm the circuit court's order of possession for the unlawful detainer action, we do not address Genders's assignment of error challenging the court's conclusion that an order of possession was also warranted because Genders lacked a good faith defense to justify her nonpayment of required funds into escrow. *See Commonwealth v. White*, 293 Va. 411, 498 (2017) (This Court decides cases "on the best and narrowest grounds available." (quoting *Commonwealth v. Swann*, 290 Va. 194, 196 (2015) (per curiam))). Likewise, we do not address whether there was reversible error in certifying an alternative statement of facts by Rope Lane regarding the December 15 hearing as it pertains only to this alternative holding from the circuit court.

CONCLUSION

For the foregoing reasons, we affirm the circuit court's judgment.

*Affirmed*.