## Richmond

LIBERTY MUTUAL INSURANCE COMPANY V. CLAUDE VERNON BISHOP, ET AL.

November 30, 1970.

Record No. 7208.

Present, All the Justices.

G. *Kenneth Miller* (*May, Garrett & Miller*, on brief), for plaintiff in error.

*Edward A. Marks, Jr.; Frank B. Miller, III* (*Sands, Anderson, Marks & Clarke*, on brief), for defendants in error.

HARRISON, J., delivered the opinion of the court.

Liberty Mutual Insurance Company seeks a reversal of a final judgment rendered against it in a declaratory judgment proceeding brought under the provisions of Code §§ 8-578 through 8-585. The court below decreed recoveries against Liberty Mutual in favor of

appellees, Hartford Accident and Indemnity Company, Virginia Farm Bureau Mutual Insurance Company and Claude Vernon Bishop, in the respective amounts of $3682.02, $3682.01 and $15, with interest from October 3, 1968 and costs.

Subsequent to the filing of appellee's petition for declaratory judgment, and appellant's answer thereto, the parties agreed to submit all issues of law and fact to the court. Prior to the taking of evidence, appellant moved the court to dismiss this action on the ground that it was insufficient in law and was not a proper case for a declaratory judgment. The trial court reserved decision on the motion. In its final order, the court overruled the motion and decided the action upon its merits. We granted Liberty Mutual a writ of error.

There is no serious controversy as to the facts in the case. Claude Vernon Bishop, a resident of Brunswick County, was engaged in a road construction project in King George County, Virginia during the summer of 1964. His son, Claude Vernon Bishop, Jr., was working with his father on this highway job. In May 1964 Bishop decided to purchase an additional automobile for the use of his family. At that time he owned a 1963 Pontiac and a 1954 Willys Jeep. Bishop placed an order with a personal friend, R. F. Ellis, Jr., who operated the Lawrenceville Motor Company, Inc., for a 1964 red Pontiac Catalina convertible. The dealer experienced delay in getting this automobile from the factory and loaned the Bishop family one of its automobiles for their use pending arrival of the new car.

On August 12, 1964 Ellis advised Mrs. Bishop, wife of Claude Vernon Bishop, that the car had arrived. She picked it up that afternoon and drove it home. At the same time she returned to Ellis the car that had been loaned the Bishops. At the time possession of the new car was given Mrs. Bishop, she was advised by Ellis that her husband could stop by the next time he was in town and make settlement. The new car left the garage equipped with the dealer's license tags on it.

Later during the day of August 12, 1964, Mrs. Bishop phoned either her husband or son in King George and advised that the car had arrived. Bishop, Jr. requested permission of his father to get the car and bring it to the job site in King George. On the evening of August 12th Bishop, Jr. drove his father to Richmond, using a company car that was at the job site. The father attended a meeting there, and the son continued to his home in Brunswick. He remained there for a short time and then returned to King George in the new 1964

Pontiac. That night, about 12:30 A.M., this car, while being operated by Bishop, Jr., was involved in an accident which resulted in the death of William D. MacMillan, Jr.

Bishop, after attending his meeting in Richmond, went to his home in Brunswick. He learned of his son's accident the following day.

On August 14, 1964, Bishop went to Lawrenceville and made a cash settlement with the Lawrenceville Motor Company for the new car. The invoice describing the vehicle, equipment thereon, price, etc. is dated August 11, 1964. The application for title, signed and acknowledged by Bishop, is dated August 14, 1964. At that time the fatal acident was discussed, and Bishop advised Ellis that he had automobile liability insurance on his personal vehicles that protected him and his family. Bishop was in turn advised by Ellis that the Lawrenceville Motor Company also had liability coverage.

Bishop was the named insured under a policy of automobile liability insurance issued by Hartford covering his 1963 Pontiac automobile, and also under a policy of automobile liability insurance issued by Virginia Farm Bureau covering his 1954 Willys Jeep. Bishop, Jr., a resident of his father's household, was an additional insured under both policies. The policies contained provisions that the insurance thereon with respect to a loss arising out of the use of any "non-owned" automobile would be excess insurance over any other valid and collectible insurance.

The Lawrenceville Motor Company was insured under a garage liability policy issued by Liberty Mutual. The policy contained a provision excluding coverage where possession of a vehicle had been delivered to another by the named insured pursuant to an agreement of sale. The pertinent language of the policy provides:

"None of the following is an insured:

\* \* \*

"(iii) any person or organization other than the named insured with respect to any automobile . . . (b) possession of which has been transferred to another by the named insured pursuant to an agreement of sale;"

Investigations of the accident were made by both Hartford and Liberty Mutual immediately following its occurrence. Virginia Farm Bureau was not advised of the accident until approximately 2 years after it occurred.

The administrator of William D. MacMillan, Jr., deceased,

brought an action for wrongful death in July 1966 against Bishop, Jr. in the Circuit Court of King George County. Liberty Mutual refused to defend, denying any obligation to do so, and denying any liability to Bishop, Jr. under its policy with Lawrenceville Motor Company. Hartford and Virginia Farm Bureau retained counsel to appear on behalf of Bishop, Jr. and defended the action.

In November 1967 Hartford and Virginia Farm Bureau settled the case brought by MacMillan's Administrator, each paying $2495 and Bishop paying $10. Subsequently this action was commenced to recover the amount the appellees had paid in satisfaction of the Mac-Millan death claim and the expenses they had incurred.

Appellees take the position that the controlling issue is the validity and the applicability of the provision in Liberty Mutual's policy excluding coverage where a vehicle has been delivered pursuant to an agreement of sale. They argue that this policy exclusion is invalid under Code § 38.1-381 (a). This Code section requires all policies providing automobile liability insurance on Virginia automobiles to include among the persons insured any person who is using an insured vehicle with the consent, express or implied, of the named insured, and to insure such persons against liability for negligence in such use.

Appellees say that even if the exclusionary clause in Liberty Mutual's policy is valid, possession of the 1964 Pontiac convertible was not transferred to Bishop "pursuant to an agreement of sale" as those terms are used in the policy.

Hartford and Virginia Farm Bureau also point to provisions in their policies providing for automatic extension of coverage to newly acquired automobiles provided that all of the vehicles owned by the named insured are covered by that policy. They assert that neither of the policies issued to Bishop covered all of his vehicles and therefore there was no automatic pickup or extension of coverage on the new 1964 Pontiac. They say the only coverage they afforded Bishop, Jr. was under the "non-owned vehicle provision", which coverage was excess over that available to an insured under another policy.

Liberty Mutual maintains that a declaratory judgment action is improper; that delivery of the 1964 Pontiac convertible had been made to Bishop and that possession of the car had been transferred by Lawrenceville Motor Company pursuant to an agreement of sale; and that its policy excluded coverage upon the vehicle under a valid exclusionary clause.

Appellant also contends that Hartford is estopped from asserting any claim against it by virtue of an agreement to arbitrate the controversy with appellant and Hartford's failure to do so after having secured a portion of appellant's files for use in the defense of the claim asserted against Bishop, Jr.

■ We need consider here only appellant's assignment of error which questions the right of appellees to maintain a declaratory judgment proceeding.

In *Criterion Ins. Co.* v. *Grange Mutual*, 210 Va. 446, 171 S. E. 2d 669 (1970), we said:

"The purpose of the Declaratory Judgment Act (Chap. 25, Title 8, Code of 1950, 1957 Repl. Vol.) 'is to afford relief from the uncertainty and insecurity attendant upon controversies over legal rights, without requiring one of the parties interested so to invade the rights asserted by the other as to entitle him to maintain an ordinary action therefor.' The Act is remedial and is to be liberally construed and administered. Code § 8-585, as amended. But before an action may be maintained under the Act there must be a justiciable controversy, for the rendering of advisory opinions is not a part of the function of the judiciary in Virginia. Code § 58-578, as amended; 11 Mich. Jur., Judgments and Decrees, § 222, p. 280, and the cases there cited.

"When a justiciable controversy exists between two insurance companies as to their obligations under the terms of their respective policies, a declaratory judgment proceeding may be maintained by one of the companies against the other. [Citing authorities.]" 210 Va. at 448-49, 171 S. E. 2d at 671.

The facts in *Criterion* obviously presented a proper case for a declaratory judgment. There we further observed:

"Criterion has no obligation under the uninsured motorist endorsement of its insurance contract unless Langfitt and McDaniel are uninsured. Criterion alleged that Grange had wrongfully denied coverage, thereby making Langfitt and McDaniel uninsured, and that a judgment was obtained against Langfitt which has not been paid. Thus a justiciable controversy exists between Criterion and Grange, and the declaratory judgment proceeding instituted by Criterion, with all parties in interest before the court, is proper

to determine the obligations of Grange, if any, under its policy." 210 Va. at 449, 171 S. E. 2d at 671.

In *Williams* v. *Bank of Norfolk*, 203 Va. 657, 125 S. E. 2d 803 (1962) we pointed out that:

"Declaratory judgments 'are intended to supplement rather than to supersede ordinary causes of action . . . . Preventive relief is the moving purpose. Whether or not jurisdiction shall be taken is within the sound discretion of the trial court. Something more than an "actual controversy" is necessary. In common cases where a right has matured or a wrong has been suffered, customary processes of the court, where they are ample and adequate, should be adopted.' [Citing authorities.]

" 'The declaratory judgment acts do not create or change any substantive rights, or bring into being or modify any relationships, or alter the character of controversies, which are the subject of judicial power,\*\*\*.' 26 C. J. S., Declaratory Judgments, § 7, pages 59, 60. Their construction, while liberal, must be reasonable and confined within definite limits. They are not to be used as instruments of procedural fencing, either to secure delay or to choose a forum. 26 C. J. S., Declaratory judgments, § 9, page 66.

"Quoting from *Patterson's Ex'rs.* v. *Patterson*, 144 Va. 113, 131 S. E. 217, we said in *Chick* v. *MacBain*, 157 Va. 60, 66, 160 S. E. 214:

" 'The test of the applicability of the statute is the determination of the existence of an actual controversy. The manifest intention of the legislature, as expressed in sections 6140a-6140h of the Code, was to provide for a speedy determination of actual controversies between citizens, and to prune, as far as is consonant with right and justice, the dead wood attached to the common law rule of "injury before action" and a multitude of suits to establish a single right.'

"The fact that multiplicity of actions may be avoided if a declaratory judgment be granted is not always a ground for assuming jurisdiction. There must be some real necessity for the exercise of jurisdiction on such ground. It must be made to appear that there is no adequate remedy at law as practical and effective to attain the ends of justice, as may be accomplished in a court of equity, and that the questions of law and fact involved are common to each of the several actions. 26 C.J.S., Declaratory Judgments, § 13, pages 77, 78.

" 'Where a declaratory judgment as to a disputed fact would be determinative of issues, rather than a construction of definite stated rights, status, and other relations, commonly expressed in written instruments, the case is not one for declaratory judgment.' 16 Am. Jur., Declaratory Judgments, § 20, pages 294, 295." 203 Va. at 662-63, 125 S. E. 2d at 806-07.

*See also Haughton* v. *Lankford,* 189 Va. 183, 52 S. E. 2d 111 (1949); *American Nat. Bk.* v. *Kushner,* 162 Va. 378, 174 S. E. 777 (1934); Annot., 172 A. L. R. 847 (1948).

In their petition for a declaratory judgment Hartford and Virginia Farm Bureau alleged that Liberty Mutual denied liability under its garage policy issued to Lawrenceville Motor Company and refused to defend Bishop, Jr. in the wrongful death action asserted against him, or to make settlement of such action; and further that they, pursuant to their contractual obligation, did undertake Bishop's defense, although under a reservation of rights.

From the inception of the controversy, Liberty Mutual has maintained that its liability policy contained a valid provision which excluded Bishop, Jr. from its coverage. Hartford initially, and thereafter both Hartford and Virginia Farm Bureau, denied the validity of the exclusionary clause, but alleged that, even if the clause were valid, possession of the automobile had not been delivered to Bishop pursuant to an agreement of sale.

These two companies also claimed the excess insurance provided Bishop under their policies was conditioned upon the loss in question arising out of the use of a "non-owned" automobile. Therefore, if the 1964 Pontiac was "owned" by Bishop on the night of the fatal accident, the possibility existed that Bishop and his son were without liability insurance protection at that time.

While the case was in that posture, and at a time when these uncertainties existed, Hartford and Virginia Farm Bureau negotiated and made a compromise settlement of the wrongful death action asserted against Bishop, Jr.

This action on the part of the two appellee companies was taken without the benefit of a declaratory judgment to protect or guide them from uncertainty and insecurity with respect either to the propriety of their action or to the propriety of some future act or conduct.

We now have left three companies allegedly covering Bishop, Jr.,

a common insured. Hartford and Virginia Farm Bureau claim that they have the secondary and that Liberty Mutual has the primary coverage; that the primary insurer wrongfully disclaims and denies liability, making it necessary for the two secondarily liable to assume and discharge the burden properly resting on the primary insurer. The secondary insurers, having paid the loss, claim they have the right to recover such payment from the defaulting primary insurer.

All other matters in controversy have been resolved. The claim of decedent's estate against Bishop, Jr. has been satisfied. Bishop, Jr. has been released. No further liability can attach to him by reason of the accident. It does not appear from the record that any claim or right of action has even been asserted against Bishop, Sr. growing out of the accident. The reason for the nominal contribution he made to the compromise settlement is not stated.

We think it clear that under the facts, as pleaded by appellees, the various claims and rights asserted had all accrued and matured, and that the wrongs had been suffered, when their petition for a declaratory judgment was filed.

The intent of the declaratory judgment statutes is not to give parties greater rights than those which they previously possessed, but to permit the declaration of those rights before they mature. In other words, the intent of the act is to have courts render declaratory judgments which may guide parties in their future conduct in relation to each other, thereby relieving them from the risk of taking undirected action incident to their rights, which action, without direction, would jeopardize their interests. This is with a view rather to avoid litigation than in aid of it.

■ While this court and lower courts have, in obedience to Code § 8-585, given a liberal interpretation to the Declaratory Judgment Act, they have nevertheless recognized that the power to make a declaratory judgment is a discretionary one and must be exercised with care and caution. It will not as a rule be exercised where some other mode of proceeding is provided.

In essence, what Hartford and Virginia Farm Bureau seek here is the recovery of a money judgment, a sum certain, from Liberty Mutual, upon the theory that they have defended, settled and paid under their policies a claim which should have been defended, settled and paid by Liberty Mutual under its policy.

The lower court erred in hearing the action pursuant to the declaratory judgment statutes. Accordingly, the judgment of the lower

court is reversed and the petition of the appellees for a declaratory judgment at law is dismissed.

*Reversed and dismissed.*