## CIRCUIT COURT OF THE CITY OF RICHMOND

Jamerson et al.

v.

Womack et al.

December 11, 1991

Case No. HB-880

BY JUDGE LEWIS HALL GRIFFITH

This matter is before the Court for determination of the merits of a Petition for Declaratory Judgment. The petition asks the Court to determine that the 1991 redistricting of two of Virginia's senatorial Districts is unconstitutionally invalid because of lack of compactness and contiguity and lack of community of interests. For the most part, the parties agreed upon the facts underlying this dispute; these facts are set forth in a Final Pretrial Order, section I, "Stipulation of Undisputed Fact." The Court deferred ruling on a Motion to Dismiss the Petition made at the conclusion of the Petitioners' case in chief and renewed at the conclusion of the trial.

*Petitioners' interests are sufficient*
*to maintain this action*

The first dispute to be addressed in this case is whether the petitioners' interests in geographic compactness allow them to maintain

an action for declaratory judgment. The defendants contend that the petitioners cannot show any justiciable interest or actual controversy based on lack of compactness because there is no demonstrable relationship between geographic compactness and effective representation or constituent-representative access. The petitioners maintain that voting rights are diminished by inclusion in "grossly noncompact" legislative districts and that the size and shape of the new districts subject them, as its inhabitants, to being denied adequate representation. The petitioners introduced evidence, including testimony by an expert on redistricting, to the effect that lack of compactness and contiguity can dilute voting power and diminish the effectiveness of representation.

The Court is of the opinion that the petitioners, as voters and residents of an allegedly "grossly noncompact" district, have a justiciable interest sufficient to show standing to maintain this suit. In making this determination, however, the Court is neither determining that lack of compactness in and of itself automatically diminishes the weight of the vote of an individual citizen nor that the challenged redistricting unconstitutionally denied the instant petitioners of fair representation based on any lack of compactness or contiguity. On the contrary, the evidence overwhelmingly showed that the legislature gave appropriate consideration and weight to the requisite factors in adopting a valid and permissibly compact configuration for redistricting.

### The legislature properly adopted the reconfiguration

The evidence showed that the legislature properly considered compactness, contiguity, and community of interest in the redistricting process. These criteria were adopted by the Senate Privileges and Elections Committee ("the P&E Committee") in Resolution No. 1 as proper factors to consider in guiding the legislative process, and these criteria were the subject of debate in the General Assembly which adopted the contested reconfiguration. Resolution No. 1 set forth the following hierarchy of criteria for the redistricting: (1) equal representation, (2) minority representation, (3) compactness, (4) contiguity, and (5) political fairness. The same Resolution also listed communities of interest as being a (subordinate) consideration.

In configuring the new districts, the legislature properly gave great weight to achieving equal representation and effective minority rep-

resentation. There can be no question that these considerations far outweigh considerations relating solely to community of interests. *Cf., Wilkins v. Davis*, 205 Va. 803 (1965) (although communities of interests have traditionally been considered in redistricting, the constitution does not require the legislature to consider them). Even the requirement of compactness cannot outweigh requirements of equal representation and effective minority representation under the federal Voting Rights Act (42 U.S.C. § 1973 *et seq.*) by operation of the Supremacy Clause of Article VI of the United States Constitution. *Cf., Katzenbach v. Morgan*, 384 U.S. 641, 647 (1966) (federal Voting Rights Act requirements prevailed over New York constitutional English literacy requirement). The defendants' argument on this issue correctly states the law. *See* Reply Brief of Defendants at 6-8 and authorities cited therein.

### *Districts 15 and 18 are within acceptable bounds of compactness*

Furthermore, the evidence convinced the Court that the challenged districts are within acceptable standards of compactness and contiguity so that the redistricting should not adversely affect the quality of representation or diminish the weight of the individual votes of the petitioners in this case. There is little question that some residents within districts 15 and 18 are now in larger districts than they were in before the reconfiguration, but the evidence showed that population shifts within and among districts meant that some increase in the sizes of districts in these affected areas were inevitable under any reconfiguration.

The defendant properly set forth the strong presumption of validity to which legislative acts are entitled. *See* Bench Brief of Defendants at 14–16. Even without the aid of this presumption, however, the Court would find that districts 15 or 18 are within acceptable bounds of compactness and contiguity in terms of size, terrain, and existing local political subdivisions. The testimony and analysis by defendant's expert, Mr. Kimball W. Brace, showed that the reconfigurations creating districts 15 and 18 were not lacking compactness in terms of mathematical and geometric measures relating to size and population distribution — whether these measures were considered in isolation or in comparison with other districts in the Commonwealth (under past and present configurations), with the configura-

tions championed by the petitioners, or with existing local supervisors' districts. It has been noted that such measures can greatly aid courts in determining compactness of a configuration. *See, Karcher v. Daggett,* 462 U.S. 725, 756–757 (1983) (concurring opinion of Stevens, J.). Evidence analyzing the comparative effect of driving conditions within districts 15 and 18 also provided additional indication that these districts are no less compact than previously acceptable configurations when evaluating physical accessibility between constituents and representatives. The concepts of contiguity and compactness are flexible, as the defendant set forth in its Bench Brief (pages 16–21), and the Court cannot invalidate the redistricting merely because a better configuration might have been created; to do so would violate the constitutional provisions separating the powers of the legislature and the judiciary.

To the extent that the petitioners' evidence invited the Court to determine compactness by reference to socio-economic and historical considerations, the Court will not evaluate compactness by such criteria. To do so would import the criteria of community of interests into the question, without any precedent applicable to Virginia law. Nor will the Court find that district 18 is not contiguous because of the presence of Bugg's Island Lake within district 18. The Court is persuaded by case law in other jurisdictions (such as *Mader v. Crowell,* 498 F. Supp. 226 (M.D. Tenn. 1980); *In re Legislative Redistricting,* 475 A.2d 437 (Md. 1984); and *Bryant v. Charlestown,* 368 S.E.2d 899, 901 (S.C. 1988)), where courts have declined to find that intervening bodies of water or wetlands defeat the concept of contiguity of territory. Such evidence does not show that districts 15 and 18 are unconstitutionally configured.

*More appropriate means of redress were available*

Finally, the Court would exercise its discretion to deny declaratory judgment because the petitioners have an alternative mode of proceeding which can provide equivalent relief from unconstitutional state redistricting. The power to make a declaratory judgment should not be exercised "where some other mode of proceeding is provided." *Liberty Mutual Ins. Co. v. Bishop,* 211 Va. 414, 421 (1970), *quoted in, Fairfield Development Corp. v. City of Virginia Beach,* 211 Va. 715, 717 (1971). Petitioning for a writ of mandamus would allow the petitioners to obtain both a determination of the

validity of the redistricting and injunctive relief to prevent injury from its implementation. *Cf., Wilkins v. Davis, supra* (granting petition for writ of mandamus by citizen/resident of allegedly over-populated district who challenged redistricting action as denial of adequate representation), *and Brown v. Saunders*, 159 Va. 28 at 36-37 (1932) (whether legislature exceeded constitutional limitations on the legislature's power of reapportionment was a proper matter for judicial determination, overruling demurrer to petition for writ of mandamus filed by petitioners who had sought and been denied the right to run as candidates at large in Congressional election). The existence and equivalence of such a means of redress indicate that declaratory judgment is not needed as a means of challenging unconstitutional redistricting; in these circumstances, the Court declines to exercise its discretion to make a declaratory judgment.

For these reasons, the Court denies the Petition for Declaratory Judgment.