## CIRCUIT COURT OF FAIRFAX COUNTY

Fairfax County
Board of Supervisors
and ATE Management

v.

Amalgamated Transit Union
Local 689

September 13, 1995

Case No. (Chancery) 137898

BY JUDGE MICHAEL P. MCWEENY

This matter came before the Court upon Defendant Amalgamated Transit Union Local 689's (hereinafter "Local 689") Motion to Dismiss or Stay Defendant's Motion for Summary Judgment and Plaintiffs Board of Supervisors, Fairfax County, and Fairfax County Economic Development Authority (hereinafter "the County") and ATE Management and Service Company, Inc.'s Motion for Summary Judgment. After consideration of the oral arguments and extensive briefs filed, the Court grants Plaintiff's Motion and denies Defendant's Motions for reasons set forth below.

### Court Jurisdiction

Central to all issues the parties presented is the question of whether the Court finds there is an agreement to arbitrate. The Defendant sets forth two arguments that this question is not justiciable by the Fairfax Circuit Court: one, all requests for arbitration have been withdrawn, and therefore, there is no case or controversy to serve as the jurisdictional basis for Declaratory Judgment; and two, in order to determine whether there is an agreement to arbitrate, the Court must decide the merits of the underlying dispute, which is solely within the authority of the arbitrator.

The flaw in the first point is highlighted in Local 689's oral contention that it may reinstate its arbitration demand at any future time, thus establishing an on-going dispute over the legal effect of the several agreements upon which they rely. "The purpose of the Declaratory Judgment Act is to afford relief from the uncertainty and insecurity attendant upon controversies over legal rights . . . ." *Criterion Ins. Co. v. Grange Mutual Cas. Co.*, 210 Va. 446, 448-49 (1970). Where there is a controversy, the Act permits declaration of the parties' respective rights before they mature. "[T]he intent of the act is to have courts render declaratory judgments which may guide parties in their future conduct in relation to each other, thereby relieving them from the risk of taking undirected action incident to their rights, which action, without direction, would jeopardize their interests. This is with a view rather to avoid litigation than in aid of it." *Liberty Mutual Ins. Co. v. Bishop*, 211 Va. 414, 421 (1970). This case clearly is ripe for adjudication under Virginia Code §§ 8.01-184 *et seq.*

The second point fails as it is based upon circular reasoning. The existence of an agreement to arbitrate is an issue to be determined by the court. Virginia Code § 8.01-581.2. It is suggested, however, that in order to decide "whether there is an agreement to arbitrate between Local 689 and ATE, pursuant to any of the 13(c) agreements, the Court must necessarily interpret and apply the successorship provisions of the agreements (and thus) is the equivalent of deciding the merits of Local 689's dispute with ATE." (Memorandum in Support of Defendant's Motion for Summary Judgment, p. 13.) Local 689 further states that under those agreements (not yet determined to constitute a binding agreement to arbitrate between these parties), the *arbitrator* is required to decide whether an agreement to arbitrate exists, based on whether successorship exists, thus closing the circle.

In determining whether an agreement to arbitrate exists, the Court always must interpret the terms of the contract. The substantive merits of the *outcome* of arbitration is left to the arbitrator only after the Court finds the agreement to arbitrate. Here, the dispute has never been any hypothetical result of arbitration but only the existence of the agreement.

### Existence of Agreement

In summary, it is the position of Local 689 that an agreement to arbitrate exists between it and ATE (and the County) based upon four agreements (or groups of agreements) variously referred to as the "WMATA Agreement," the "National Agreement," the "Fairfax" or "Park and Ride

Agreement," and the "Fairfax County/ATE Agreement." It contends that these agreements and their arbitration provisions bind ATE as successor to either Fairfax County or WMATA. The Court does not agree.

It is undisputed that there is no direct agreement to arbitrate among the parties. Although the Section 13(c) agreements between WMATA and Local 689 do provide for arbitration, ATE and the County are not parties to the agreements. Although the "Fairfax" or "Park and Ride Agreement" does include the County, ATE is not a party and the agreement does not relate to the bus routes in question. Lastly, the "Fairfax County/ATE Agreement" does not have Local 689 as a signatory. There is no § 13(c) agreement between ATE and Local 689, and ATE has never signed to be bound by any of the first three agreements. A party cannot be bound to a contract unless it consents to be bound. *Valjar, Inc. v. Maritime Terminals, Inc.*, 220 Va. 1015, 1018 (1980).

"Successorship" follows the same legal reasoning. Inclusion of successorship provisions in a contract cannot bind anyone to the contract without the consent of the alleged successor. *Howard Johnson Co., Inc. v. Detroit Local Joint Executive Bd., Hotel and Restaurant Employees and Bartenders Int'l Union*, 417 U.S. 249, 263, 94 S. Ct. 2236, 2244 (1974). In this case, the County terminated its contract with WMATA and entered into a new contract with ATE. While ATE's contract with the County may have encompassed duties and obligations similar to (or, in some cases, even identical to) many of those in WMATA's prior contract, it did not agree to assume WMATA's duties and obligations under the WMATA contract.[1] ATE did not hire the WMATA employees, did not purchase the WMATA buses or bus equipment, and did not hold itself out as providing WMATA or "Metro" service. Lastly, the Court is not persuaded that the requirement in the Fairfax County/ATE Agreement that ATE "comply" with applicable agreements constitutes a consent to successorship under a terminated agreement.

In accordance with the foregoing, the Court grants the Plaintiffs' Motion for Summary Judgment and makes the following declaratory rulings.

1. Local 689 has no basis on which to claim a right to demand arbitration with ATE to determine the terms and conditions of ATE's employee's employment.

---

[1] The court stated, in *Howard Johnson*, that a similarity of services alone was not enough to bind an employer to the successor agreements of its predecessor. 417 U.S. at 265.

2. ATE's bus service contract with Fairfax County does not obligate ATE to arbitrate with Local 689 under any § 13(c) agreement applicable to the County.

3. None of the Plaintiffs herein are parties to or bound by any § 13(c) agreement signed by WMATA.

4. None of the Plaintiffs herein are successors to WMATA in providing bus service in the Reston/Herndon area so as to bind them to obligations to arbitrate with Local 689 under the § 13(c) agreements signed by WMATA.

In addition, the Court grants permanent injunctions preventing Local 689 from (1) demanding arbitration with ATE based on the "WMATA Agreement," the "National Agreement," or the "Fairfax" or "Park and Ride Agreement"; (2) demanding arbitration with Fairfax County or Fairfax County Economic Development Authority under the "WMATA Agreement" or the "National Agreement"; and (3) demanding arbitration on behalf of ATE's employees (now represented by Local 1708).